Peck, J.
(dissentiente.) If it be admitted that a purchaser at execution sale, under a judgment rendered in the Federal Courts, is placed upon a footing different from a purchaser under a sale emanating from a judgment *215 in a State court, then there exists in Tennessee, an inequality ot rights, which would be startling even to the most common observer. If it be true, that in the one case an equity is raised in behalf of the execution debtor, which he can enforce, and that in the other case that equity is taken away, it may be considered a matter of regret, that a forum exists in the State, which can, under its mandate, place a purchaser at the defiance of a statute of the State, which statute, all others regard as sufficient to afford the benefit it purports to confer.
The Federal and State constitutions were framed with a view to secure to all alike, the enjoyment of life, liberty, property and the pursuit of happiness; on these are predicated our notions of a republican government. Our constitution when framed, was approved; and by the approval, we had guaranteed to us such a frame of government as should attain the ends contemplated, with uniform equality of rights among the citizens.
The Federal judiciary was admitted in the States to exercise a limited power in those few cases, where it was supposed possible too great a bias in favor of a citizen of the State,, contending with a citizen elsewhere, might produce results to the prejudice of the latter. No one questions the jurisdiction or power of the Federal Courts. To try the cause, give judgment and award execution, are all conceded powers, powers granted, and in which the foreign creditor has a direct interest, and by means of which he is to get his demand.
But admitting all this, the question then arises upon the rights of others, no one of whom is a foreigner. It arises between citizens of our own State, upon a right given by our own statute. The Federal judiciary has nothing to do- with the question, which has arisen, subsequent to the last act of the process of her court. A question which grows out of our policy, and which policy is not at war with the rights or interests of the foreigi creditor, or with any provision of the Federal constitution. The *216 question springs immediately from a statute of the State of iennessee, (act 1820, ch. 11, sec. 2,) not inconsistent with our State constitution in its provisions. That act has nothing to do with the foreign creditor, it does not in the least impair his right to the thing he demands; so far from it, it begins to act when he has received it. It does not call him before the court, though he may have an advantage by the provisions of the act itself. If on sale of real estate, all his money had not been made, as a creditor, he may come in and forcea new bidding of the property, a course lately pursued in East Tennessee.
Confine the question therefore to the case made in the pleadings, and we find it between two of our own citizens, founded on the act which provides “That it shall and may be lawful for any debtor whose interest in any real estate may hereafter be sold under execution, at any time within two years after such sale, on payment or tender thereof to the purchaser, or to any one claiming under him, the principal money bid at such sale, with ten per cent, interest, with other lawful charges, if any, to redeem the interest; and upon payment or tender thereof, it shall be the duty of the then claimant to reconvey said interest to said debtor, but at the cost of such debtor.”
This is a general law, applicable alike to all persons, and to all executions; no matter from what court they may issue. It is intended to fix the right of purchaser and of debtor; it jeopardizes no right, impairs no obligation; nor does it supervene any process. At most, it creates an equity when the tender is made or the money paid; and for this equity, ample compensation is given in the ten per cent, and all costs and charges paid. The law makes known to all purchasers that such an equity exists on tender or payment; no one is circumvented, no one taken by surprise. .
We hear it frequently.announced from this seat, that laws which are partial in their operation are unconstitutional, and not the law of the land. Laws should, if possi *217 ble, be construed so as that their operation-shall be equal. In the case before us, the rule is reversed; and though the words in the act are broad enough to cover the case, “all executions,” they are made to have a partial application, that only the executions of our own tribunals are intended. The act in question, so far as our tribunals of justice are concerned, has had a liberal construction; and though not embraced within the letter, sales made by the master on decrees in chancery, have been held within the spirit; and therefore, estates so sold redeemable under the act.
It is assumed, that because the property is subject to execution and sale by act of Congress, that it was made to protect the creditor, and therefore our law cannot reach such a case without conflicting with Federal power; and to sustain the argument, stay and replevin laws have been referred to. It seems to me, that any mind must at once perceive that there exists no analogy in the two cases. Stay and replevin laws directly affect the execution, and delay the right of the creditor. Not so in the case before us; no execution is stayed, no right delayed. The only question that can arise, is a question which may affect the title: if it is said the purchaser is substituted in the place of the creditor, Ihe obvious answer is, that by such substitution he may have his money, not the thiug purchased, so long as the other will redeem.
When it is insisted that the right passes without redemption, I would ask by what act of Congress? The furthest the acts of Congress go in sales and transfers of real estate by the Marshal, is, that the deeds be made in conformity with the law of the State, not in virtue of any express provision contained in any act of Congress. This is a courtesy due to the States. While it regards and secures the rights of creditors, it places purchasers upon a uniform footing; all the dissimilarity is in furnishing the officer to make the transfer, if that may be called dissimilarity, and at most, it is by construction, that gentle *218 men arrive at the conclusion that the rule to be followed when the transfer is made by the Marshal, shall be ascertained by the laws of the Slate in existence at the time the act of Congress passed.
But if all this is admitted, still, at every move the main question presents itself, is the right of redemption defeated? A matter, as before observed, with which the creditor has nothing to do. It is emphatically a question between others, a question which relates to the passing titles to lands in the State. It cannot be pretended that the mode of transfer cannot be fixed by our laws. Not only the mode, but the conditions and limitations under which it shall be done, are subjects belonging to the legislature to provide.
Rules of alienation may be deeply connected with policy, and that policy must be seen in legislation. If policy and legislation go hand and hand, and neither conflict with constitutional restriction, where is the objection? It must be whimsical to make it.
In all the cases cited against the complainants, they are such as did affect the rights of the creditor; they were cases growing out of laws which either defeated or delayed the right. But by the last act of Congress of 1828, even the subsequent laws of the State are let in to govern, although they may affect the right, provided they be such as the State tribunals approve. This gives strength to the argument I am advancing; for if a law is now let in to operate, which, before the act of 1828 could not, surely a principle not coming within any former decision, and with which the creditor has nothing to do, must be allowed; and this certainly in a case, where the Marshal can make no other or better title than the law of the place allows. The act of Congress does not purport to vest the right unconditionally. If the Marshal has no more power than the sheriff, how can he at any time make a better title?
*219 The equity which the act gives, being wholly aside from any, even the remotest interest of the creditor, will we enforce it between our own citizens? I will not say we can, but may safely add we must; for so long as the law is considered constitutional, it is part of the law of the land, and must be administered. It is a case where a party comes in with merits; the right is just as strong as in a case of a mortgage, where the money has been paid or tendered; and I feel that I have no more power to withhold in the one than in the other case. The money bid, for the two years, remained a lien upon the land; and while it secures all in interest, it gives to the landholder of the country the right to save his home.
The law is a wise one, because it contains within itself not only a provision which is just and humane, but is calculated to keep down that speculation which might otherwise, under the fluctuation of the currency of the country, throw into the hands of-capitalists the best estates amongst us, at greatly inadequate prices. Being consistent with the policy of the country, securing rights to the execution debtor, I will not overlook these rights, but am for enforcing them as the Chancellor did, by affirming the decree.
Decree reversed.